#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE SOUTHERN DISTRICT OF OHIO
#### EASTERN DIVISION

**BRIDGET E. RICHARDS,**

        **Plaintiff,**

   v.                         Civil Action 2:20-cv-5510
                                Chief Judge Algenon L. Marbley
                                Magistrate Judge Jolson

**COMMISIONER OF**
**SOCIAL SECURITY,**

        **Defendant.**

#### <u>REPORT AND RECOMMENDATION</u>

Plaintiff, Bridget E. Richards, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

    **I.**        **BACKGROUND**

Plaintiff protectively filed her application for SSI on December 22, 2017, alleging disability beginning that day. (Doc. 12, Tr. 331–39). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held the hearing on November 15, 2019. (Tr. 28–55). Roughly a month later, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 8–27). The Appeals Council denied Plaintiff's request for review, so the ALJ's decision became the final decision of the Commissioner. (Tr. 1–7).

Plaintiff filed the instant case seeking review of the Commissioner's decision on October 20, 2020 (Doc. 1). The Commissioner filed the administrative record on March 22, 2021 (Doc. 12),

and Plaintiff filed her Statement of Errors on May 6, 2021 (Doc. 15). This matter is now ripe for consideration. (*See* Docs. 13, 15, 18).

    **A. Relevant Medical History and Hearing Testimony**

Because Plaintiff's statement of errors pertains to her mental health only, the Undersigned limits her discussion of the medical record and the hearing testimony to the same.

    *1. Medical History*

The ALJ usefully summarized Plaintiff's mental health symptoms:

> Turning to [Plaintiff]'s mental impairments, the record contains very limited treatment, and few objective findings. Treatment records in October 2017, prior to her alleged onset date document a history of depressive disorder, but few objective findings. As of October 11, 2017, [Plaintiff] contacted her primary care provider requesting a letter to appeal her disability denial and asking that it state she has severe depression. However, the doctor responded that she needed a follow up visit and he could not endorse that he would find she is disabled by reason of her depression, because as of her most recent visit in December 2016 her depression had appeared to improve (Exhibit C3F/18). At her October 17, 2017 visit, she reported that sertraline was helpful and she reported a reduction in depressed mood. [Plaintiff] reported she was satisfied with the control of her depression with sertraline. Her mental status examination was essentially normal noting normal mood and affect, normal speech, normal behavior, normal judgment and thought content, and no hallucinations (Exhibit C2F/12). She was attentive with normal cognition and memory. She was also prescribed trazadone for insomnia. She was advised to continue with sertraline and counseling, and again advised that she would need to see a psychiatrist if she needed disability for her depression (Exhibit C2F/7).
>
> The record lacks subsequent mental health treatment or counseling. [Plaintiff] did present for a preoperative evaluation in February 2018. She reported her depression was stable and she denied memory loss, but reported she was nervous and anxious and had insomnia. Again, her mental status examination was normal, noting normal mood, normal affect, normal behavior, normal judgment, normal thought content, and appropriate affect. She was attentive with no evidence of hallucinations (Exhibit C6F/9).
>
> In light of the lack of objective medical evidence [Plaintiff] underwent a consultative psychological evaluation on March 15, 2018 (Exhibit C7F). [Plaintiff] reported problems with anxiety and excessive worry. She did not report any hallucinations or delusional thinking. Upon examination, she was alert, clear and not confused. She was oriented to person, place situation and time. Short-term memory was noted to be poor, but working memory fair to good. She was able to

> follow directions in the exam, and reported no problems in the past workplace. Her concentration was satisfactory and she, again, reported no problems in the past. She reported some conflicts with coworkers in the past. However, upon examination she was cooperative and spoke directly. She reported no problems managing her finances or living independently or making important decisions. Insight into her own mental health was adequate (Exhibit C7F).
>
> Subsequent records document continued treatment with her primary care provider (Exhibit C14F). She reported the medication was helpful and she was satisfied with her control of her depression (Exhibit C14F/64). As of September 2018[,] she was attending church every week. As of February 2019, [Plaintiff] reported to her primary care provider that she had not followed up with her psychologist (Exhibit C14F/43). She continued with sertraline. Again, in April 2019, primary care records note her depression was related to issues centered on problems with family members (Exhibit C14F/28). She also notably declined referral to a psychiatrist (Exhibit C14F/27).

(Tr. 19).

2. *Relevant Hearing Testimony*

> The ALJ also summarized the relevant testimony from Plaintiff's hearing:
>
> [Plaintiff] testified to depression and reports symptoms of anxiety.
>
> [Plaintiff] testified that she goes to church every Wednesday and Sunday. She goes to the grocery store and appointments with her mother. She does not drive due to her vision, however. She testified that she needs to lay down for 30 to 40 minutes after these activities. However, at her consultative examination she reported she spends her day doing household tasks, watching TV, personal care, preparing food, going on errands, listening to music and playing with her great niece. She stated that she socializes by phone regularly with her brother, friend, nieces and nephews, and weekly with others at church. She reported that she attends church once a week. She denied any changes in her interests or social activity involvement she stated that she does the cleaning and cooking and she and her mother and niece do the shopping (Exhibit C7F). . . .
>
> She testified she has depression with ups and downs. She gets frustrated and has problems with her memory and concentration. She forgets her appointments.

(Tr. 16, 18).

### B. The ALJ's Decision

The ALJ found that Plaintiff has not engaged in substantial gainful activity since December 22, 2017, the application date. (Tr. 14). The ALJ determined that Plaintiff suffered from the following severe impairments: depressive disorder, trauma and stress related disorder, and vision astigmatism with functional vision loss. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 15).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except [Plaintiff] should avoid all hazards including heavy machinery, moving machinery, and unprotected heights; and would perform best with a position where there is no fine print and no use of a computer; can perform simple, routine, repetitive tasks involving only simple work related decisions and with few, if any, work place changes; no strict production quotas or fast paced work such as on an assembly line; occasional interaction with the general public; and frequent interaction with co-workers and supervisors.

(Tr. 17).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence." (Tr. 18).

The ALJ then turned to the opinion evidence, beginning with the state agency psychological consultants:

> The opinions of the state agency psychological consultants are persuasive (Exhibit C4A; C6A). As previously discussed, the evidence of record continues to document [Plaintiff]'s continued conservative outpatient treatment with mediation and counseling. She further evidences a significant level of daily activities that the undersigned finds consistent with the residual functional capacity from the prior administrative law judge decision. The evidence of record as a whole therefore does not suggest grater limitations pursuant to Drummond.
>
> The undersigned finds the opinions of the state agency medical consultants

unpersuasive. The undersigned finds, as discussed above, sufficient evidence of severe vision limitations (Exhibit C4A; C6A).

Next, the ALJ considered the opinion of psychiatrist Dr. John Reece:

The undersigned finds the opinions of John Reece, Psy.D. at Exhibit C7F mildly persuasive. While he does not opine to any specific limitations, his overall findings do not evidence limitations greater than those assessed in the residual functional capacity.

Finally, the ALJ discussed the opinion of Plaintiff's treating psychologist, Dr. John Mason, who opined that Plaintiff is "almost agoraphobic and fearful of others" and would have a difficult time maintaining employment due to her mental health symptoms. (Tr. 21). The ALJ found Dr. Mason's opinion "unpersuasive," explaining that his limitations are "extreme and not supported by any evidence." (*Id.*).

Relying on the VE's testimony, the ALJ concluded that Plaintiff could not perform her past relevant work as a cylinder inspector, bottle line attendant, or warehouse worker, but could perform jobs that exist in significant numbers in the national economy, such as a hand packager or cleaner. (Tr. 22–23). She therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since December 22, 2017, the date the application was filed (20 CFR 416.920(g))." (Tr. 23).

## II.    STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health &*

5

*Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

### III. DISCUSSION

Plaintiff asserts that the ALJ improperly evaluated the opinion of her treating psychologist, Dr. Mason. (Doc. 13 at 7–13). Dr. Mason, in a November 12, 2019 letter, wrote that he had been treating Plaintiff since June 2016. (Tr. 951). He noted that she "was self referred and has been consistent in her attendance in therapy," but has "transportation problems since she cannot drive." (*Id.*). Dr. Mason reported that Plaintiff "presents with all of the vegetative signs of major depression" and that "[h]er affect is depressed and tearful at times." (*Id.*). Additionally, Dr. Mason noted that she has "poor" concentration and "lacks energy to the point that her [activities of daily life] ("ADL") are often impaired." (*Id.*). Dr. Mason then opined that "her depression is such that she cannot perform normal work, nor she could she handle a normal work week." (*Id.*). Regarding Plaintiff's interactions with others, Dr. Mason stated, "[Plaintiff] is very fearful of others and the potential to be emotionally hurt by others," and "[a]s a result, [] is very cautious and prone to over-react in any confrontation." (*Id.*). Thus, Dr. Mason opined, "[s]he would likely have difficulty working with others and would not be able to handle supervisory direction needed to perform in the work place." (*Id.*). Dr. Mason also wrote that Plaintiff "admits to having a great deal of difficulty with her family, whom she feels do not respect her," and "[t]his somewhat paranoid view spills over to other relationships in her life." (*Id.*). And "[w]hile she is not floridly psychotic," Dr. Mason opined, "she does have some developing symptoms of psychosis, including paranoia and some

delusional behavior." (*Id*.). In sum, Dr. Mason concluded that, "[u]nder stress, these traits become exacerbated and sometimes overwhelming to her," and in "[his] opinion, [Plaintiff] is not capable of handling any level of employment due to her condition." (Tr. 951–52).

The ALJ said the following about Dr. Mason's opinion:

> The undersigned finds the opinions of John Mason, Ph.D. unpersuasive, other than to the extent it suggests [Plaintiff] has some limitations as a result of her mental impairments. While Dr. Mason is a treating psychologist, his opinions are extreme and not supported by any evidence. Notably, Dr. Mason did not provide any of his own treatment notes. Dr. Mason's opinions are inconsistent with the evidence of record. He reports [Plaintiff] is almost agoraphobic and fearful of others. Yet at her hearing, she testified she goes to church two days a week, goes to the grocery store, and goes with her mother to appointments. A[t] her consultative examination she stated that she socializes by phone regularly with her brother, friend, nieces and nephews, and weekly with others at church (Exhibit C7F). His findings that [Plaintiff] has symptoms of psychosis, paranoia, and delusion, are completely inconsistent with [Plaintiff]'s normal mental status examinations throughout (Exhibit C2F; C6F; C7F). Thus, Dr. Mason's opinions lack any objective support and are rather inconsistent with the remaining evidence of record, and therefore cannot be found persuasive.

(Tr. 21).

Because Plaintiff filed her application after March 27, 2017, the Undersigned applies the revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017). Plaintiff says that this analysis violates the revised regulations. (Doc. 13 at 7–13). Those regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5).

Regarding two of these categories—medical opinions and prior administrative findings— an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the

claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. §§ 404.1520c(b)(2); 416.920c(b)(2). And although an ALJ may discuss how he evaluated the other factors, the ALJ is not generally required to do so. *Id*. Plaintiff asserts that the ALJ failed to properly assess either factor. As explained below, the Undersigned disagrees.

### A. Supportability

Plaintiff asserts that, because Dr. Mason provided a "detailed narrative" supporting his opinion, the ALJ erred in concluding that Dr. Mason's opinion is not well-supported. (Doc. 13 at 10). But the ALJ found Dr. Mason's narrative and corresponding conclusions "extreme" and unsupported by the evidence of record. (Tr. 21). Specifically, the ALJ noted that "Dr. Mason did not provide any of his own treatment notes." (*Id*.). And as the revised regulations explain, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1).

Notably, Plaintiff concedes that Dr. Mason did not support his opinion with treatment records, explaining that "Dr. Mason indicated that he does not release treatment notes to anyone, and that the letter was meant to describe his treatment of [Plaintiff]." (*Id*. (citing Tr. 955)). Still,

Plaintiff says the lack of treatment records is somehow the ALJ's fault. She asserts that the ALJ "has the discretion to adjourn a hearing and to compel the production of necessary evidence." (*Id*. at 11). And "[t]here is no evidence," says Plaintiff, "that the ALJ made any further attempts to contact Dr. Mason or obtain any additional evidence." (*Id*.). Thus, according to Plaintiff, "[t]he ALJ did not develop a full and fair record in this case." (*Id*.). So Plaintiff says that the ALJ erred by "rel[ying] on that lack of evidence to dismiss the opinions of the only treating mental health provider of record." (*Id*. at 12).

Plaintiff flips the burden on its head. "It is well-established that the ALJ carries the responsibility for ensuring 'that every claimant receives a full and fair hearing . . .'" *Watkins v. Astrue*, No. 1:10CV486, 2011 WL 4478487, at *6 (N.D. Ohio Sept. 26, 2011) (quoting *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 189 (6th Cir. 2009)). "Yet, '[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant.'" *Watkins*, 2011 WL 447847, at *6 (alteration in original) (quoting *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986)). "It is only under special circumstances when the claimant is unrepresented by council that the ALJ has a special duty to develop the record." *Watkins*, 2011 WL 447847, at *6 (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983)). And "[u]ltimately, it is the claimant's burden to prove that she is disabled and entitled to benefits." *Watkins*, 2011 WL 447847, at *6 (citing *Moon v. Sullivan*, 923 F.2d 175, 1181 (6th Cir. 1990)). So "'[s]he is [the one] responsible for furnishing evidence that can be used to reach that conclusion[.]'" *Watkins*, 2011 WL 447847, at *6 (quoting *Rise v. Apfel*, No. 99-6164, 2000 WL 1452846, at *2 (6th Cir. Oct. 13, 2000)).

That is especially so here because, as the Commissioner notes, Plaintiff had legal counsel at the time of Dr. Mason's evaluation (Tr. 210) and at the 2019 hearing (Tr. 31). "[A]n ALJ is permitted to presume a claimant represented by counsel has presented the best case before the ALJ." *Owens v. Berryhill*, No. 1:18CV01043, 2019 WL 2465229, at *12 (N.D. Ohio Feb. 13, 2019), *report and recommendation adopted*, No. 1:18CV1043, 2019 WL 1929695 (N.D. Ohio Apr. 30, 2019). Neither Plaintiff nor her counsel requested to keep the record open or suggested that the record was incomplete as to Dr. Mason's opinion. *See, e.g.*, *id.* (noting that claimant's counsel "did not request the ALJ keep the record open for any additional medical opinions or records"). The ALJ had "the duty to develop the record." *Campbell v. Comm'r of Soc. Sec.*, No. 1:12CV1406, 2013 WL 1908145, *8 (N.D. Ohio May 7, 2013). But that "duty does not permit [Plaintiff], through counsel, to rest on the record and later fault the ALJ for not performing a more exhaustive investigation." *Id.* Plaintiff's attempt to do so fails.

In sum, the ALJ properly assessed the supportability of Dr. Mason's opinion, and Plaintiff has shown no error in this regard.

### B. Consistency

Plaintiff also contends that the ALJ did not assess whether Dr. Mason's opinion is consistent with the record. (Doc. 13 at 10–13). Under the revised regulations, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ applied this factor here. To start, she found Dr. Mason's report that Plaintiff is "almost agoraphobic and fearful of others" inconsistent with Plaintiff's hearing testimony that "she goes to church two days a week, goes to the grocery store, and goes with her mother to appointments." (Tr. 21). Additionally, the ALJ noted that Plaintiff reported, at her consultative exam, "that she

10

socializes by phone regularly with her brother, friend, nieces and nephews, and weekly with others at church." (*Id*.).

Plaintiff says that just because she can do these things "does not mean that she is not almost agoraphobic as Dr. Mason indicated." (Doc. 13 at 12). For support, she cites other portions of her testimony purportedly supporting her agoraphobia. (*Id*.). For example, she testified that she likes to stay in her room because it is her "safe haven" and sometimes has to leave while shopping because she gets frustrated with other people near her. (*Id*. (citing Tr. 44)). But the fact that the ALJ and Plaintiff view the evidence differently is not grounds for reversal. *See Moss v. Comm'r of Soc. Sec.*, No. 1:20-CV-243, 2021 WL 2282694, at *6 (W.D. Mich. June 4, 2021) (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011)) ("While Plaintiff points to other evidence in the record that could have supported a different conclusion, it is not for this Court to second-guess the ALJ's decisions when supported by substantial evidence."). Moreover, Plaintiff's ADL were just one factor the ALJ considered.

The ALJ additionally found that Dr. Mason's "findings that [Plaintiff] has symptoms of psychosis, paranoia, and delusion, are completely inconsistent with [Plaintiff's] normal mental status examinations throughout (Exhibits C2F; C6F; C7F)." (Tr. 21). Plaintiff challenges this finding, too, faulting the ALJ for failing to request Dr. Mason's treatment records. (Doc. 13 at 12– 13). As explained, it was Plaintiff's duty—not the ALJ's—to request these records. Moreover, Plaintiff fails to mention that, given the lack of mental health records, the agency ordered a mental evaluation. (Tr. 19). So the ALJ considered that evaluation, in addition to the existing mental health evidence already part of the record. The ALJ described those records earlier in her opinion:

> At her October 17, 2017 visit, [Plaintiff] reported that sertraline was helpful and she reported a reduction in depressed mood. [Plaintiff] reported she was satisfied with the control of her depression with sertraline. Her mental status examination was

11

> essentially normal noting normal mood and affect, normal speech, normal behavior, normal judgment and thought content, and no hallucinations (Exhibit C2F/12). . . .
>
> The record lacks subsequent mental health treatment or counseling. [Plaintiff] did present for a preoperative evaluation in February 2018. She reported her depression was stable and she denied memory loss, but reported she was nervous and anxious and had insomnia. Again, her mental status examination was normal, noting normal mood, normal affect, normal behavior, normal judgment, normal thought content, and appropriate affect. She was attentive with no evidence of hallucinations (Exhibit C6F/9).
>
> In light of the lack of objective medical evidence [Plaintiff] underwent a consultative psychological evaluation on March 15, 2018 (Exhibit C7F). [Plaintiff] reported problems with anxiety and excessive worry. She did not report any hallucinations or delusional thinking. Upon examination, she was alert, clear and not confused. She was oriented to person, place situation and time. Short-term memory was noted to be poor, but working memory fair to good. She was able to follow directions in the exam, and reported no problems in the past workplace. Her concentration was satisfactory and she, again, reported no problems in the past. She reported some conflicts with coworkers in the past. However, upon examination she was cooperative and spoke directly. She reported no problems managing her finances or living independently or making important decisions. Insight into her own mental health was adequate (Exhibit C7F).

(Tr. 19).

"Because these observations were already in the opinion, the ALJ did not err by not repeating them when discussing how he considered [Dr. Mason's] examination." *Buege v. Comm'r of Soc. Sec.*, No. 20-CV-1097-TMP, 2021 WL 2822043, at *7 (W.D. Tenn. July 7, 2021) (citing *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion.")) (finding that ALJ satisfied "consistency" requirement by "elaborat[ing] on several aspects of the record that illustrate his concerns with [medical source's] opinion in earlier sections of his decision").

In sum, the ALJ considered the consistency of Dr. Mason's opinion in accordance with the revised regulations. So Plaintiff has shown no error in this regard.

* * *

At base, the ALJ complied with the revised regulations when she explained that Dr. Mason's opinion is unsupported by and inconsistent with the record, and therefore, unpersuasive. This explanation fit well within the regulatory framework, *see* 20 C.F.R. § 404.1520c(a), (b), and provided an accurate and logical bridge for the Undersigned to trace the ALJ's reasoning, *see Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (citations omitted). While Plaintiff refers to other evidence that might support a different conclusion,"[e]ven if a preponderance of the evidence would have supported a finding that [Dr. Mason's] opinion[] [was] persuasive—and even if we might have agreed with [Plaintiff] on *de novo* review—this [C]ourt is not permitted to decide the facts anew or re-weigh the evidence," *Fitzwater v. Comm'r of Soc. Sec.*, No. 1:20-CV-1456, 2021 WL 2555511, at *9 (N.D. Ohio June 4, 2021), *report and recommendation adopted*, No. 1:20 CV 1456, 2021 WL 2550985 (N.D. Ohio June 22, 2021) (citations omitted). Because the ALJ followed the regulatory requirements, the Court cannot "second-guess" her findings. *Id*. (citations omitted).

IV. **CONCLUSION**

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

V. **PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting

authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date:  August 10, 2021                          /s/ Kimberly A. Jolson
                                                KIMBERLY A. JOLSON
                                                UNITED STATES MAGISTRATE JUDGE